Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L & G RUBIN FAMILY TRUST, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SOUFUN HOLDINGS LIMITED, VINCENT TIANQUAN MO and LANYING GUAN,<br><br>Defendants. | Case No:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff L & G Rubin Family Trust ("Plaintiff"), by Plaintiff's undersigned attorneys, individually and on behalf of all other persons similarly situated, alleges the following based upon personal knowledge as to Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Defendants' public documents, conference calls and announcements made by Defendants, wire and press releases published by and regarding SouFun Holdings Ltd. ("SouFun" or the "Company"), and information readily obtainable on the

Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action brought on behalf of a class consisting of all persons and entities, other than Defendants (defined below) and their affiliates, who purchased or otherwise acquired the American Depositary Shares ("ADS") of SouFun traded on the NYSE Stock Market ("NYSE") from May 20, 2015 to October 27, 2015, inclusive (the "Class Period"). Plaintiff seeks to pursue remedies against SouFun and certain of its officers and directors for violations of federal securities laws.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 8 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

4. Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b), as Defendants conduct business in this District, and a significant portion of the Defendants' actions and the subsequent damages, took place within this District.

5. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

- 2 -

Class Action Complaint for Violation of the Federal Securities Laws

6.     Plaintiff, as set forth in the attached Certification, acquired SouFun ADS at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

7.     Defendant SouFun is purportedly the leading real estate Internet portal in the People's Republic of China ("China"). SouFun is headquartered in Beijing, China and maintains an office at F9M, Building 5, Zone 4, Hanwei International Plaza, No. 186 South 4th Ring Road, Fengtai District, Beijing 100160. Its ADS trade on NYSE under the ticker symbol "SFUN."

8.     Defendant Vincent Tianquan Mo ("Mo") has served as the Company's Chief Executive Officer ("CEO") and Chairman throughout the Class Period.

9.     Defendant Lanying Guan ("Guan") has served as the Company's Chief Financial Officer ("CFO") throughout the Class Period.

10.    The defendants referenced above in ¶¶ 8 – 9 are sometimes referred to herein as the "Individual Defendants."

11.    Defendant SouFun and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

12.    SouFun purportedly operates the leading a real estate Internet portal in China. It also purportedly operates one of the leading home furnishing and improvement websites in China as well. Leveraging its Internet platform, the Company is developing transaction and financing platforms by offering direct sales services for new homes, real estate online brokerage services and financing services to capture additional growth opportunities in the real estate market.

### Materially False And Misleading Statements

Class Action Complaint for Violation of the Federal Securities Laws

13.     On May 20, 2015, the Company issued a press release announcing its first quarter 2015 results, stating in part:

**First Quarter 2015 Highlights**
- **Total Revenue** increased by 1.8% year-on-year to $123.5 million for the three months ended March 31, 2015. Revenue from e-commerce services increased by 75.2% year-on-year to $51.5 million for the three months ended March 31, 2015.
- **Operating income** decreased by 84.9% year-on-year to $7.5 million for the three months ended March 31, 2015. **Non-GAAP operating income** decreased by 84.5% year-on-year to $7.9 million for the three months ended March 31, 2015. A description of the adjustments from GAAP to non-GAAP operating income is set forth below.
- **Net income attributable to SouFun's shareholders** decreased by 85.3% year-on-year to $6.1 million for the three months endedMarch 31, 2015.
  Fully diluted earnings per ADS decreased by 90.0% year-on-year to $0.01 for the three months ended March 31, 2015.
- **Non-GAAP net income attributable to SouFun's shareholders** decreased by 84.2% year-on-year to $7.5 million for the three months ended March 31, 2015. Non-GAAP fully diluted earnings per ADS decreased by 81.8% year-on-year to $0.02 for the three months ended March 31, 2015.
- **GMV** for the three months ended March 31, 2015 was $1.7 billion. Starting from the beginning of this year, the company's e-commerce business expanded into its new home, resale and rental, and home furnishing business lines across China's major cities. It's GMV grows rapidly since the beginning of this year as shown below:

**GMV: January-April, 2015 (in millions of US dollars)**

|  | January | February | March | April | Total |
|---|---|---|---|---|---|
| **New Home *** | 340 | 299 | 642 | 794 | 2,075 |
| **Secondary Home** | 22 | 42 | 320 | 705 | 1,089 |
| **Home furnishing** | 1 | 1 | 2 | 5 | 9 |
| **Total** | **363** | **342** | **964** | **1,504** | **3,173** |

* Only including direct sales services.

*   *   *

Class Action Complaint for Violation of the Federal Securities Laws

"SouFun is aggressively penetrating into new home, resale and rental, and home furnishing transactions across China's major cities." said Vincent Mo, Chairman and CEO of SouFun. "We added more than 11,000 employees with attractive incentives this year to support our e-commerce expansions and we will continue to expand our e-commerce staffs to keep the current momentum, even if this in the short term will lead to rapid increases in our expenses and sharp decreases in our net income."

14. On August 7, 2015, the Company issued a press release announcing its second quarter 2015 results, stating in part:

**Second Quarter 2015 Highlights**
- **Total Revenue** increased by 25.4% year-on-year to $210.9 million. Revenue from e-commerce services increased by 119.7% year-on-year to $106.8 million.
- **Operating income** decreased by 72.7% year-on-year to $22.3 million. **Non-GAAP operating income** decreased by 71.3% year-on-year to $23.9 million. A description of the adjustments from GAAP to non- GAAP operating income is set forth below.
- **Net income attributable to SouFun's shareholders** decreased by 76.3% year-on-year to $16.2 million. Fully diluted earnings per ADS decreased by 73.3% year-on-year to $0.04.
- **Non-GAAP net income attributable to SouFun's shareholders** decreased by 72.8% year-on-year to $19.6 million.
  Non-GAAP fully diluted earnings per ADS decreased by 75% year-on-year to $0.04.
- **GMV** increased by 306.7% from $1.7 billion in the first quarter of 2015 to $6.8 billion in the second quarter. The following table shows GMV by month for the first six months of 2015.

Class Action Complaint for Violation of the Federal Securities Laws

**GMV: January-June, 2015 (in millions of US dollars)**

|                  | January | February | March | April | May   | June  |
|------------------|---------|----------|-------|-------|-------|-------|
| **New Home** *   | 340     | 299      | 642   | 794   | 1,131 | 1,516 |
| **Secondary Home** | 22    | 41       | 321   | 705   | 1,138 | 1,478 |
| Secondary home   | 20      | 36       | 282   | 637   | 1,002 | 1,324 |
| Rental           | 2       | 5        | 39    | 68    | 136   | 154   |
| **Home furnishing** | 1    | 1        | 2     | 5     | 9     | 9     |
| **Total**        | **363** | **341**  | **965** | **1,504** | **2,278** | **3,003** |

Continued from previous table,

|                  | 2015Q1 | 2015Q2 | Variance amount | % |
|------------------|--------|--------|-----------------|-----|
| **New Home** *   | 1,281  | 3,441  | 2,160           | 169% |
| **Secondary Home** | 384  | 3,321  | 2,937           | 765% |
| secondary home   | 338    | 2,963  | 2,625           | 777% |
| rental           | 46     | 358    | 312             | 678% |
| **Home furnishing** | 4   | 23     | 19              | 475% |
| **Total**        | **1,669** | **6,785** | **5,116**    | **307%** |

\* Only including direct sales services.

\*   \*   \*

"The Q2 numbers showed that the company is quite on track in its transformation from a pure internet information platform to a more transaction oriented platform across new, resale, rental homes and home furnishing plus financial services among China's major cities." said Vincent Mo, Chairman and CEO of Fang.com. "We will continue our efforts in building up transaction teams, adding transaction model to more cities, and speeding up development of our technology platforms and tools to support the transformation. I am confident that with our expected funding from IDG and Carlyle, the company will move more aggressively and make its transformation successful."

15. The statements referenced in ¶¶ 13-14 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically,

1  Defendants made false and/or misleading statements and/or failed to disclose that: (1)
2  SouFun employees routinely created "fake contracts"; (2) Defendants were aware that
3  SouFun employees routinely created "fake contracts"; and (3) as a result, the
4  Company's public statements were materially false and misleading and/or lacked a
5  reasonable basis at all relevant times.

## The Truth Emerges

16.   On October 27, 2015, *SeekingAlpha.com* published a report on the Company entitled "Chinese Media Reports Allege 'Fake Contract' Trouble Brewing At Soufun" ("SeekingAlpha Report"), which asserts:

- Widespread layoffs at Soufun being reported in China have reportedly come as a result of "faked contracts" employees were involved in creating.
- Other outlets report that Soufun may have had knowledge that these fake transactions were taking place.
- Soufun has not made any disclosures in the U.S. regarding these layoffs and owes investors and regulators some answers.

17.   Specifically, the SeekingAlpha Report revealed that on October 14, 2015, *SINA Finance* published an article on the Company asserting the following:

……Up to 1,000 brokerage employees from SFUN's secondary housing business in the cities of Beijing, Shanghai and Chengdu received a layoff text message from the company on September 28, [2015]. SFUN says it fired these brokers due to faked contracts during their tenure at the company.
(translated) (paraphrased)

18.   Specifically, the SeekingAlpha Report also revealed that on October 15, 2015, *Southern Metropolis Daily* published an article on the Company asserting the following:

> ……part of the brokers told [the reporter] that they want to 'protest' because **SFUN has known these activities (fake contracts) all the time**, which is equal to an 'acquiescence'.

(Emphasis added).

19. Specifically, the SeekingAlpha Report further revealed that on October 16, 2015, *Yicai.com* published an article on the Company asserting the following:

> On October 16, [2015], the department of publicity of SFUN wrote an email to China Business Daily that the firing [of employees] due to fake [contracts] recently is not the first time. In May of this year, broker Liu in the rental business department was found during a routine investigation to have 3 fake contracts out of 56 contracts in month of April, and [Liu] was fired by SFUN. In the same month, the investigation centered in the city of Shanghai sampled transacted contracts and found that three employees, including Chen, conducted photoshopping of ownership information in the submitted contract attachment [to the company], and the photo of three parties [in the transaction] was obtained online. These three employees were also fired due to fake contracts.
>
> Although both parties (meaning fired employees and the company) are holding up to their own argument, SFUN didn't give the exact number of the employees that have been fired.

(paraphrased)

20. On this news, shares of SouFun fell $0.26 per share or approximately 3.67% from its previous closing price to close at $6.82 per share on October 27, 2015.

21. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's ADS, Plaintiff and other Class members have suffered significant losses and damages.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

22. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who

Class Action Complaint for Violation of the Federal Securities Laws

purchased or otherwise acquired SouFun ADS during the Class Period (the "Class") and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

23. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, SouFun ADS were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by SouFun or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

24. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

25. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

26. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of SouFun;
- whether the Individual Defendants caused SouFun to issue false and misleading financial statements during the Class Period;
- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;
- whether the prices of SouFun ADS during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and
- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

27. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

28. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;
- the omissions and misrepresentations were material;
- SouFun ADS are traded in an efficient market;
- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;
- the Company traded on the NYSE and was covered by multiple analysts;

Class Action Complaint for Violation of the Federal Securities Laws

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's ADS; and

- Plaintiff and members of the Class purchased, acquired and/or sold SouFun ADS between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

29. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

30. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

**NO SAFE HARBOR**

31. SouFun's "Safe Harbor" warnings accompanying its reportedly forward looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability. To the extent that projected revenues and earnings were included in the Company's financial reports prepared in accordance with GAAP, they are excluded from the protection of the statutory Safe Harbor. See 15 U.S.C. §78u-5(b)(2)(A).

32. Defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of SouFun who knew that the FLS was false. None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future

economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

## COUNT I

### Violations of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

33. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

34. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

35. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of ADS. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of SouFun ADS; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire SouFun ADS at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

36. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or

issuance of press releases and other statements and documents described above, including statements made to the media that were designed to influence the market for SouFun ADS. Such releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about SouFun's disclosure controls and procedures.

37. By virtue of their positions at SouFun, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

38. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of SouFun, the Individual Defendants had knowledge of the details of SouFun's internal affairs.

39. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of SouFun. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to SouFun's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of SouFun ADS was artificially inflated throughout the Class Period. In ignorance of the

adverse facts concerning SouFun's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired SouFun ADS at artificially inflated prices and relied upon the price of the ADS, the integrity of the market for the ADS and/or upon statements disseminated by Defendants, and were damaged thereby.

40. During the Class Period, SouFun ADS were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of SouFun ADS at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said ADS, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of SouFun ADS was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of SouFun ADS declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

41. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

42. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's ADS during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

Class Action Complaint for Violation of the Federal Securities Laws

**Violations of Section 20(a) of The Exchange Act**
**<u>Against The Individual Defendants</u>**

43. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

44. During the Class Period, the Individual Defendants participated in the operation and management of SouFun, and conducted and participated, directly and indirectly, in the conduct of SouFun's business affairs. Because of their senior positions, they knew the adverse non-public information about SouFun's operations, current financial position and future business prospects.

45. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to SouFun's business practices, and to correct promptly any public statements issued by SouFun which had become materially false or misleading.

46. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the press releases which SouFun disseminated in the marketplace during the Class Period concerning the Company's disclosure controls and procedures. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause SouFun to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of SouFun within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of SouFun ADS.

47. Each of the Individual Defendants, therefore, acted as a controlling person of SouFun. By reason of their senior management positions and/or being directors of SouFun, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, SouFun to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of SouFun and possessed the power to control the

1  specific activities which comprise the primary violations about which Plaintiff and
2  the other members of the Class complain.
3    48. By reason of the above conduct, the Individual Defendants are liable
4  pursuant to Section 20(a) of the Exchange Act for the violations committed by
5  SouFun.

### PRAYER FOR RELIEF

  WHEREFORE, Plaintiff demands judgment against Defendants as follows:

  A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

  B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

  C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as her reasonable attorneys' fees, expert fees and other costs; and

  D. Awarding such other and further relief as this Court may deem just and proper.

### DEMAND FOR TRIAL BY JURY

  Plaintiff hereby demands a trial by jury.

Dated: October 30, 2015      Respectfully submitted,

             **THE ROSEN LAW FIRM, P.A.**

             <u>/s/ Laurence M. Rosen</u>
             Laurence M. Rosen, Esq. (SBN 219683)
             355 S. Grand Avenue, Suite 2450
             Los Angeles, CA 90071
             Telephone: (213) 785-2610

Class Action Complaint for Violation of the Federal Securities Laws

Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

Class Action Complaint for Violation of the Federal Securities Laws