UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:15-cv-08508-CAS (JEMx) | Date | October 18, 2016 |
|---|---|---|---|
| Title | ANTHONY MARESCA ET AL. V. SOUFUN HOLDINGS LIMITED ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

Not Present                                              Not Present

**Proceedings:** (IN CHAMBERS) - DEFENDANTS' MOTION TO DISMISS (Filed May 24, 2016, Dkt. 36)

## I.    INTRODUCTION

On October 30, 2015, L & G Rubin Family Trust filed the instant action against SouFun Holdings Limited ("SouFun" or "the Company"), Vincent Tianquan Mo, and Lanying Guan (collectively "defendants"). Dkt. 1. On January 25, 2016, the Court appointed Anthony Maresca as lead plaintiff in this action. Dkt. 27. The operative First Amended Complaint ("FAC") alleges two claims, namely, (1) violations by all defendants of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) ("the Exchange Act"), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder, and (2) violations by the individual defendants of section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). Dkt. 35. The gravamen of plaintiffs' claims is that defendants were deliberately reckless when they made materially misleading statements and omissions regarding SouFun's rental brokerage business in China.

On May 24, 2016, defendant filed a motion to dismiss the FAC. Dkt. 36. On July 8, 2016, plaintiffs filed an opposition. Dkt. 41. On July 28, 2016, defendants filed a reply. Dkt. 43. On September September 19, 2016, the Court heard oral argument from the parties and took the present motion under submission. Dkt. 44.

Having carefully considered the parties' arguments, the Court rules as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| | | | |
|---|---|---|---|
| Case No. | 2:15-cv-08508-CAS (JEMx) | Date | October 18, 2016 |
| Title | ANTHONY MARESCA ET AL. V. SOUFUN HOLDINGS LIMITED ET AL. | | |

## II. BACKGROUND[1]

SouFun is a Chinese company that has issued American depository shares. SouFun's American depository shares are traded on the New York Stock Exchange under the ticker symbol "SFUN." SouFun is China's leading real estate internet portal. FAC ¶ 2. Mo is SouFun's Chairman and Chief Executive Officer. Guan is SouFun's Chief Financial Officer ("CFO"). In mid-2014, plaintiffs allege that SouFun's business began to perform badly because of a downturn in China's real estate market and customers' refusal to continue paying SouFun's online listing fees for real estate. In light of its struggling business, SouFun decided to transform itself and begin competing against China's brick-and-mortar real estate agencies, who earn revenue by taking a percentage of the real estate transactions they broker.

### A. SouFun's Entry Into the Rental Contract Brokerage Business

Plaintiffs allege that SouFun hoped to leverage its online business in support of a large new real estate brokerage business. To rapidly transform SouFun into a real estate brokerage company, SouFun hired 11,000 new employees. Plaintiffs allege that 8,000 of the new employees worked specifically as rental contract brokers. Id. ¶ 4. Through its rental brokers, SouFun would earn a percentage of each property rental agreement its employees brokered. Plaintiffs allege that, to meet unreasonable transaction targets, 95% of SouFun's rental brokers began fabricating rental agreements. Id. ¶ 8. In particular, plaintiffs allege that SouFun's rental brokers submitted falsified rental contracts to their managers for rental transactions that did not exist. Plaintiffs allege that defendants made false and misleading statements touting the scale of the Company's rental brokerage business and failed to disclose that many of the Company's purported rental contracts had been fabricated by the Company's brokers, and did not exist.

Plaintiffs allege SouFun brokers began fabricating rental contracts as soon as they were hired because these brokers face unreasonable sales quotas. To attract a new workforce of 8,000 rental brokers, SouFun offered salaries more than 50% above the

---

[1] Unless otherwise noted, the background section of this order merely summarizes plaintiffs' allegations set forth in the FAC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:15-cv-08508-CAS (JEMx) | Date | October 18, 2016 |
|---|---|---|---|
| Title | ANTHONY MARESCA ET AL. V. SOUFUN HOLDINGS LIMITED ET AL. | | |

average rental broker salary. ¶ 75. Plaintiffs allege that SouFun also set "impossibly high" transaction targets for its new rental brokers, ¶ 6, who were required to close one rental contract each week, ¶ 93. Thereafter, plaintiffs allege, an undetermined number of SouFun's brokers began fabricating rental contracts in order to satisfy the demanding targets and their managers. Plaintiffs allege that managers, in turn, encouraged brokers to falsify transactions so that the managers could meet their own sales targets. "Management also did nothing to implement any internal control policies . . . that would ensure rental brokers and managers acted appropriately." ¶ 82.

Plaintiffs allege that SouFun brokers used two methods to fabricate rental transactions. Brokers who had previous work experience as a rental broker would alter their previously brokered contracts and present them as new transactions. Alternatively, brokers would create multiple contracts for a single transaction by having joint-tenants sign different rental contracts and present each contract as a separately brokered transaction.

Plaintiffs base many of the FAC's allegations on statements from unidentified former employees. A former deputy manager and president of SouFun's Chengdu branch ("W1") claims "95% of SouFun's rental brokers were fabricating contracts." ¶ 73. W1 also explains that "'faking' lease contracts is not uncommon in China and is something that other rental brokerages have experienced." ¶ 83. According to a former broker ("W6"), some employees would fabricate ten contracts in a given month and even employees who achieved the transaction targets without falsifying contracts, "would end up fabricating one or two." ¶ 90.

During the class period, SouFun's brokerage business was hierarchically organized into eleven branches in various Chinese metropolitan areas. The Company headquarters is in Beijing. Brokers reported to business team leaders, who reported to working group leaders. Working group leaders reported to each branch's manager. Finally, branch managers reported to the Company headquarters, where "information was conveyed to top management, including the Individual Defendants." ¶¶ 29-32, 79. According to a former senior sales manager in the Company's Shanghai office ("W2"), even "regional managers instructed rental brokers to fabricate rental contracts in order to meet," sales targets. A former rental brokerage team leader ("W7") explained that, in April 2015,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**        'O'

| Case No. | 2:15-cv-08508-CAS (JEMx) | Date | October 18, 2016 |
|---|---|---|---|
| Title | ANTHONY MARESCA ET AL. V. SOUFUN HOLDINGS LIMITED ET AL. | | |

W7's branch manager "reported the issue to SouFun's headquarters in Beijing and received no response or reaction." ¶ 91.

### B. Defendants' Allegedly False and Misleading Statements

Between May 20, 2015, and October 27, 2015 ("the Class Period"), defendants made numerous statements during earnings conference calls that plaintiffs allege were false and misleading. Furthermore, plaintiffs allege that the Company's filings with the SEC contained false and misleading statements. Plaintiffs allege defendants' statements were false for a common reason, i.e., they referenced or touted the Company's rental brokerage business while failing to acknowledge that many rental transactions on the Company's books were falsified by brokers.

Plaintiffs allege that SouFun's Form 6-K filed on May 20, 2015, contained materially false statements. Specifically, plaintiffs allege that the Company's Gross Merchandise Value ("GMV") was materially inflated by falsified contracts in the Company's rental brokerage business.[2] GMV first appeared in the Company's first quarter 2015 financial statements. ¶ 48. Defendants' first quarter 2015 6-K form reported GMV of $1.7 billion. ¶ 109. Plaintiffs allege that this statement was false because it included the value of rental contracts that did not exist.

On the same day that the Company filed its 6-K Form with the SEC, the Company issued a press release and held an earnings conference call. Plaintiffs allege that defendants made false and misleading statements in both the press release and the conference call. In the May 20, 2015, press release, the Company noted that "[r]evenue from e-commerce services increased by 75.2% year-on-year to $51.5 million for [the first quarter]." ¶ 109. Income from the Company's rental brokerage activities were allegedly

---

[2] Plaintiffs allege that, according to the Wall Street Journal, "[w]hile there is no standard precise definition for GMV, it is generally understood in e-commerce as indicating a total sales value for merchandise sold via an online marketplace over a given period." ¶ 49. GMV is not a measure of actual revenue and is used in e-commerce to represent the value of transactions being completed through an internet company's portal. Nor is GMV subject to generally accepted accounting principles ("GAAP").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-08508-CAS (JEMx) | Date | October 18, 2016 |
| Title | ANTHONY MARESCA ET AL. V. SOUFUN HOLDINGS LIMITED ET AL. | | |

part of the Company's reported e-commerce revenue. ¶ 120. Plaintiffs allege that the Company's e-commerce revenue growth was inflated because it improperly included revenue from falsified rental contracts. ¶ 110.

During a May 20, 2015, earnings conference call, deputy SouFun CFO, Lei Hua, explained that "our in-house rental team finished 7,900 city transactions in [Beijing and Shanghai]." ¶ 60. Mo added:

> we have seen very good signs from the local markets like in the rental market in Beijing and Shanghai, we are the number one players now for the rental market . . . So to be the number one, number two players across the country, that's definitely the goal in our mind and that's the goal of the Company. So we are moving towards that target.

Id. Mo later added that, "since we have started doing this transaction through our online platform we are seeing very good signs in the past four months . . . we hired qualified executives from traditional [real estate] agency business. And we hired 11,000 people and most of them are experienced agents." ¶ 114. Plaintiffs allege that the preceding statements were false or misleading because defendants did not disclose that many of the rental transactions did not exist. Plaintiffs allege that, because SouFun's brokers were submitting falsified rental contracts, SouFun was "not number one in the rental market for Beijing and Shanghai." ¶ 113.

Plaintiffs also allege that the Company's August 7, 2015, 6-K form contained similar false and misleading statements. ¶ 116. On August 7, 2015, SouFun reported that "[r]evenue from e-commerce services increased by 119.7% year-on-year to $106.8 million." ¶ 119. Plaintiffs allege that the revenue data was false and misleading because it included revenue from rental transactions that did not exist. The 6-K quoted Mo as saying "the company is quite on track in its transformation from a pure internet platform to a more transaction oriented platform across new, resale, rental homes, and home furnishing plus financial services among China's major cities." ¶ 121. Defendants' second quarter 2015 6-K form also disclosed a breakdown of first and second quarter GMV. ¶ 117. Specifically, SouFun reported the following GMV data (in millions of dollars):

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:15-cv-08508-CAS (JEMx) | Date | October 18, 2016 |
|---|---|---|---|
| Title | ANTHONY MARESCA ET AL. V. SOUFUN HOLDINGS LIMITED ET AL. | | |

|  | Q1 | Q2 |
|---|---|---|
| **New Homes** | 1,281 | 3,441 |
| **Secondary Homes** | 384 | 3,321 |
| • secondary home sales | • 338 | • 2,963 |
| • rentals [3] | • 46 | • 358 |
| **Home Furnishing** | 4 | 23 |
| **TOTAL** | 1,669 | 6,785 |

¶ 117. Plaintiffs allege that the August 7, 2015, GMV data was improperly inflated "because it included millions of dollars [worth of transactions] recorded for nonexistent rental contracts." ¶ 120. Nor, plaintiffs allege, was the Company "on track" in its transformation because SouFun's brokers were falsifying rental contracts. ¶ 122.

    Following up on the 6-K Form filing, defendants held an earnings conference call on August 7, 2015. At that time, Mo explained that he had not originally seen the rental brokerage business as one of the company's top-three priorities but that his attitude had changed, in the two preceding months, "it could be huge potential . . . we have been doing over 45,000 transactions in the rental part." ¶ 67. Mo stated that increasing the number of transactions per agent (the agent's efficiency) was, "a tough task for us. The good thing is that even after only six months we are better than the average efficiency of this market." ¶ 70. Plaintiffs allege that the preceding statements were also false and misleading because Mo failed to disclose that reported transactions submitted by rental

---

[3] Plaintiffs allege that rental contracts were approximately 2.75% of GMV in the first quarter ($46 million of $1.669 billion) and 5.27% of GMV in the second quarter of 2015 ($358 million of $6.785 billion). Plaintiffs allege that the reported GMV includes all purported e-commerce transactions, which the Company reported as generating $51.5 million (41.7% of SouFun's reported revenue) in the first quarter of 2015 and $106.8 million (50.6% of total Company revenue) in the second quarter of 2015.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-08508-CAS (JEMx) | Date | October 18, 2016 |
| Title | ANTHONY MARESCA ET AL. V. SOUFUN HOLDINGS LIMITED ET AL. | | |

brokers were falsified. Plaintiffs allege that SouFun had not completed "over 45,000" rental transactions because SouFun's rental brokers were fabricating rental transactions.

### C. News Organizations Report that Brokers Who Fabricated Contracts Have Been Fired

On October 27, 2015, SeekingAlpha.com published a report on Soufun's "Fake Contract" problem. Specifically, the SeekingAlpha.com article re-reported stories from Chinese media sources regarding "widespread layoffs at Soufun . . . as a result of 'faked contracts' employees were involved in creating." ¶ 95. The SeekingAlpha.com article explained that "up to 1,000 brokerage employees from [SouFun's] secondary housing business . . . received a layoff text message from the company on September 28, [2015]. [SouFun] says it fired these brokers due to fake contracts during their tenure at the company." ¶ 96. According to a *Southern Metropolis Daily* article, brokers protested the layoffs because SouFun had known about their falsified transactions and had acquiesced in them. ¶ 97.

A former sales director at SouFun in Shanghai ("W4") estimated that 2,000 to 3,000 rental brokers were fired because of falsified transactions. According to a former broker at SouFun ("W8"), SouFun ended its rental brokerage business at the end of 2015 because "most of the rental brokerage contracts were fraudulent." ¶ 103.

The Class Period ended on October 27, 2015. That day, the price of SouFun shares fell from $7.08 to $6.82 per share, or approximately 3.67%. On October 30, 2015, the day plaintiffs filed the initial complaint, SouFun stock closed at $7.07 per share.

### III. LEGAL STANDARD

The basic elements of a Rule 10b-5 claim are (1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance or "transaction causation"; (5) economic loss; and (6) loss causation or a causal connection between the material misrepresentation and the loss. Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341-42 (2005).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:15-cv-08508-CAS (JEMx) | Date | October 18, 2016 |
|---|---|---|---|
| Title | ANTHONY MARESCA ET AL. V. SOUFUN HOLDINGS LIMITED ET AL. | | |

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.

A federal securities fraud suit is also subject to the demanding pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"). Enacted by Congress in 1995 to provide "protections to discourage frivolous [securities] litigation," H.R. Conf. Rep. No. 104-369, 104th Cong., 1st Sess. at 32 (Nov. 28, 1995), the PSLRA strengthened the already-heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Under the PSLRA, private actions based on allegations of material misstatements or omissions must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). In addition, the PSLRA imposes additional requirements for pleading scienter in actions brought pursuant to Section 10(b) and Rule 10b-5, requiring that the complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

The Ninth Circuit, in interpreting the PSLRA, has held that "a private securities plaintiff proceeding under the [PSLRA] must plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct." In re Silicon Graphics, Inc., 183 F.3d 970, 974 (9th Cir. 1999). In determining whether a plaintiff has sufficiently pleaded scienter, a court must consider "whether the totality of plaintiffs' allegations, even though individually lacking, are sufficient to create a strong inference that defendants acted with deliberate or conscious recklessness." Nursing Home Pension Fund, Local 144 v. Oracle Corp., 380 F.3d 1226, 1230 (9th Cir. 2004) (quoting No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp., 320 F.3d 920, 938 (9th Cir. 2003)). Moreover, "[i]n determining whether a strong inference of scienter exists, [a court] must consider all reasonable inferences, whether or not favorable to the plaintiff." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-08508-CAS (JEMx) | Date | October 18, 2016 |
| Title | ANTHONY MARESCA ET AL. V. SOUFUN HOLDINGS LIMITED ET AL. | | |

## IV. ANALYSIS

In order to succeed in their claims, plaintiffs must allege that defendants made materially false or misleading statements and that defendants made those statement with scienter. Defendants argue that plaintiffs have neither alleged a *materially* false or misleading statement nor factual allegations giving rise to a strong inference of scienter. The Court grants defendants' motion to dismiss the FAC for both reasons. Plaintiffs have not alleged false or misleading statements that were material, nor have plaintiffs adequately pleaded facts supporting scienter.

### A. Materiality

Plaintiffs have not pleaded materially false or misleading statements. Inflated financial information may support plaintiffs' claim if the plaintiff shows with "particularity how the adjustments affected the company's financial statements and whether they were *material in light of the company's overall financial position*." In re Daou Systems, Inc., 411 F.3d 1006, 1018 (9th Cir. 2005) (emphasis added). A plaintiff "must allege enough information so that a court can discern whether the alleged GAAP violations were minor or technical in nature, or whether they constituted widespread and significant inflation of revenue." Daou, 411 F.3d at 1017 (quotation omitted).[4] Plaintiffs must plead factual allegations supporting their claim that fraud was sufficiently widespread to have made defendants' alleged false statements material. See Karam v. Corinthian Colleges, 2012 U.S. Dist. LEXIS 188594 at *19 (C.D. Cal. 2012) ("Even if one cobbles together all of the [confidential witness] statements, they still do not support a reasonable inference that" defendant's growth materially depended on misconduct). Here, plaintiffs do not allege how SouFun calculated GMV or what portion of GMV was inflated by nonexistent rental contracts.

---

[4] In this case, plaintiffs do not allege GAAP violations. Instead, plaintiffs allege that the Company's reported revenue and GMV were overstated for other reasons. However, plaintiffs fail to allege by how much.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-08508-CAS (JEMx) | Date | October 18, 2016 |
| Title | ANTHONY MARESCA ET AL. V. SOUFUN HOLDINGS LIMITED ET AL. | | |

Defendants point out that, based on plaintiffs' allegations, rental brokerage transactions accounted for only 2.8% of SouFun's reported GMV in the first quarter of 2015 and 5.3% of GMV in the second quarter of 2015. Plaintiffs allege that SouFun is a large business engaged in many different activities. GMV reflects the total value of transactions of the Company's entire e-commerce business. Plaintiffs concede that the overwhelming majority of SouFun's GMV reflected brokered transactions in the new and secondary home sales markets, none of which plaintiffs allege were fraudulent. Furthermore, the GMV numbers at issue only indicate the scale of SouFun's e-commerce business. As plaintiffs allege, the Company's total e-commerce business generated 42% of SouFun's revenue in the first quarter of 2015 and 51% of revenue in the second quarter of 2015. Accordingly, plaintiffs only allege that falsified rental brokerage transactions made up some unspecified portion of a small portion of, at most, one-half of SouFun's business.

Critically, even within the approximately 5% of GMV at issue, plaintiffs do not allege the scale of the falsified transactions. Plaintiffs argue "nearly all of the GMV attributed to rentals . . . was nonexistent," Plaintiffs Opp. at 14, but plaintiffs' argument is unsupported by factual allegations in the complaint. Confidential witnesses' falsified transaction estimates range from "95%" of brokers faking at least one transaction, FAC ¶ 129 (citing W1), to "an example of employees fabricating ten contracts in a given month . . . [and other employees] fabricating one or two," Id. ¶ 90 (citing W6, a former broker). Only one confidential witness stated that a large proportion of the rental contracts were fabricated, a former rental broker at the lowest level of the Company, W8, who claimed that "most" of SouFun's rental contracts were fabricated. Id. ¶ 103. However, plaintiffs do not allege any basis for W8's purported knowledge that "most" of the $404 million in reported rental transactions were fabricated. Accordingly, the complaint lacks sufficient factual allegations to show GMV was materially inflated.

Plaintiffs have not pleaded a materially false statement by defendants about SouFun's rental contracts because plaintiffs do not plead what portion of rental contracts were fraudulent, or even that a large portion were fraudulent. Moreover, whatever proportion of rental contracts were fraudulent in 2015, plaintiffs have pleaded that all reported rental contracts were a small fraction of the Company's reported GMV, which was, in turn, at most, one-half of the Company's business.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-08508-CAS (JEMx) | Date | October 18, 2016 |
| Title | ANTHONY MARESCA ET AL. V. SOUFUN HOLDINGS LIMITED ET AL. | | |

### B.     Scienter

The insufficiency of scienter allegations also requires dismissal. The FAC is devoid of factual content linking brokers' and managers' falsified transactions at SouFun branch offices to Mo, Guam, or others who might establish corporate scienter. Defendants argue that plaintiffs have failed to allege that any person with knowledge of the falsified transactions communicated about them to Mo, Guam, or other officials at the Company or that they were deliberately reckless in not knowing about the rental brokers' falsified transactions. In response, plaintiffs argue that (1) statements from a confidential witness support an inference of scienter, (2) rental brokerage activities were one of SouFun's core operations, (3) defendants' purported attempts to hide broker fraud demonstrate scienter, and (4) that the allegations as a whole give rise to an inference of scienter.

The Court agrees with defendants. Plaintiffs do not plead facts that constitute strong circumstantial evidence of deliberate recklessness or conscious misconduct by defendants.

### 1.     The Statements By a Former Rental Brokerage Team Leader Do Not Give Rise to An Inference of Scienter

Plaintiffs argue that the statements, in the FAC, from confidential witnesses support an inference of scienter. To support this argument, plaintiffs direct the Court to a statement from a former rental brokerage team leader, W7, who claims that in April 2015, the branch manager for SouFun's Nanjing branch, "reported the [falsified transactions] to SouFun's headquarters in Beijing and received no response or reaction." FAC ¶ 91. According to W7, "SouFun's public relations department worked to keep the issue from being detected by the media or outsiders." Id.

"[A] complaint relying on statements from confidential witnesses must pass two hurdles to satisfy the PSLRA pleading requirements. First, the confidential witnesses . . . must be described with sufficient particularity to establish their reliability and personal knowledge. Second, those statements . . . must themselves be indicative of scienter." Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 995 (9th Cir. 2009) (citing In re

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-08508-CAS (JEMx) | Date | October 18, 2016 |
| Title | ANTHONY MARESCA ET AL. V. SOUFUN HOLDINGS LIMITED ET AL. | | |

Daou Systems, Inc., 411 F.3d 1006 (9th Cir. 2005)). Plaintiffs allegations do not pass either hurdle.

First, plaintiffs do not allege a basis for W7's knowledge of her branch manager's communications to Beijing. According to plaintiffs' allegations, W7, as a team leader, directly supervised rental brokers at the bottom of SouFun's hierarchical structure. W7's supervisor was a working group leader, who was, in turn, supervised by the Nanjing branch manager. Absent more detailed allegations, there appears to be no basis for W7 to know what a senior manager so removed from her was communicating to unspecified persons at Company headquarters, let alone to Mo, Guam, or other officials at the Company. Nor do plaintiffs allege any basis for W7 to know the motivations of SouFun's public relations department.

Furthermore, W7's vague statements are insufficient to support an inference of scienter. Plaintiffs do not allege to whom the Nanjing branch manager spoke about falsified transactions in early 2015 or what the branch manager reported. There do not appear to be any allegations linking the Nanjing branch manager's alleged report to defendants except plaintiffs' speculation that if the branch manager said *something* to *someone* in Beijing, defendants must have known about it. Such speculation, devoid of factual substance, cannot satisfy the pleading standards of the PSLRA. Similarly, plaintiffs have not allege the link between the Company's public relations department and the Company's upper-management such that actions by the public relations department give rise to an inference of scienter on the part of the Company's executives. Nor do plaintiffs allege *when* the public relations department allegedly hid falsified transactions or *how*.

Accordingly, plaintiffs do not allege statements from confidential witnesses that give rise to a strong inference of scienter.

### 2. Plaintiffs Do Not Allege that Rental Brokerage Transactions Were One of SouFun's Core Operations

Next, plaintiffs argue that the rental brokerage activities were a core operation of SouFun, such that it would be "'absurd' to suggest that management was without

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**    'O'

| Case No. | 2:15-cv-08508-CAS (JEMx) | Date | October 18, 2016 |
|---|---|---|---|
| Title | ANTHONY MARESCA ET AL. V. SOUFUN HOLDINGS LIMITED ET AL. | | |

knowledge of the matter." Plaintiff Opp. at 21 (quoting Reese v. Malone, 747 F.3d 557, 575-76 (9th Cir. 2014)). Scienter may be inferred when the allegations describe an issue so "prominent" within a company that it would be "absurd to suggest" that the company's management was unaware of the issue. Berson v. Applied Signal Technology, Inc., 527 F.3d 982, 989 (9th Cir. 2008) (absurd to suggest management "would not discuss," and therefore know about, stop-work orders that were having a "devastating effect" on the corporation's revenue). Here, plaintiffs do not allege that the dollar volume of the alleged fraudulent rental transactions was so extreme that it would be absurd to suggest defendants were unaware of the problem.

As discussed supra, plaintiffs have not pleaded that nonexistent rental transactions constituted a material portion of the Company's reported operations. Accordingly, plaintiffs have not pleaded that rental transactions were a core operation of SouFun supporting an inference of scienter on the part of Company executives.[5]

---

[5] To the extent plaintiffs may argue scienter pursuant to a similar "collective scienter" theory, see Makor Issues & Rights, Ltd. v. Tellabs Inc., 513 F.3d 702 (7th Cir. 2008) (examining the contours of a plausible collective scienter theory of liability), they have not done so in the operative complaint.

> The problem with inferring a collective intent to deceive behind the act of a corporation is that the hierarchical and differentiated corporate structure makes it quite plausible that a fraud, though ordinarily a deliberate act, could be the result of a series of acts none of which was both done with scienter and imputable to the company by the doctrine of respondeat superior. Someone low in the corporate hierarchy might make a mistake that formed the premise of a statement made at the executive level by someone who was at worst careless in having failed to catch the mistake. A routine invocation of respondeat superior, which would impute the mistake to the corporation provided only that it was committed in the course of the employee's job rather than being a frolic of his own, would, if applied to a securities fraud that requires scienter, attribute to a corporation a state of mind that none of its employees had.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-08508-CAS (JEMx) | Date | October 18, 2016 |
| Title | ANTHONY MARESCA ET AL. V. SOUFUN HOLDINGS LIMITED ET AL. | | |

### 3. Plaintiffs Do Not Allege Defendants Attempted to Hide Falsified Transactions

Next plaintiffs argue that defendants' attempted to hide the existence of the falsified transactions issue, demonstrating scienter. Plaintiffs allege that SouFun created an "anti-corruption investigations office" only after the media publicly disclosed the falsified transactions. However, the alleged creation of an investigation office in October 2015 does not give rise to an inference that defendants knew about falsified transactions beforehand.

### 4. Considered Together, Plaintiffs' Allegations Do Not Give Rise to an Inference of Scienter

Plaintiffs correctly point out that, in order to determine whether plaintiffs have satisfied the PSLRA's pleading requirements, the Court must consider the allegations as a whole, rather than in isolation. However, in doing so, the Court must take into account all reasonable inferences from the allegations in the complaint, including those that are not favorable to plaintiffs. See Nursing Home Pension Fund, Local 144, 380 F.3d at 1230. Taken as a whole, plaintiffs allegations do not give rise to an inference of scienter.

---

Id. at 707-08 (internal quotation omitted). "In most cases, the most straightforward way to raise [an inference of scienter] for a corporate defendant will be to plead it for an individual defendant." Glazer Capital Mgmt., LP v. Magistri, 549 F.3d 736, 743 (9th Cir. 2008) (internal quotation marks omitted) (acknowledging that the Ninth Circuit has not yet determined the applicability of the "collective scienter" theory of liability). Plaintiffs have not alleged defendants' "public statements were so important and so dramatically false that they would create a strong inference that at least *some* corporate officials knew of the falsity upon publication." In re NVIDIA Corp. Sec. Litig., 768 F.3d 1046, 1063 (9th Cir. 2014), cert. denied sub nom. Cohen v. Nvidia Corp., 135 S. Ct. 2349, 192 L. Ed. 2d 143 (2015) (quoting Glazer, 549 F.3d at 743) (declining to apply collective scienter theory).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-08508-CAS (JEMx) | Date | October 18, 2016 |
| Title | ANTHONY MARESCA ET AL. V. SOUFUN HOLDINGS LIMITED ET AL. | | |

    Plaintiffs argue that the rental brokers' pay, allegedly 50% above the prevailing market salary, supports an inference of scienter because brokers were paid high wages as an incentive to fabricate rental contracts. However, the inference plaintiffs argue is no stronger than a competing inference that the Company acted without scienter, namely, that the Company paid brokers above-average salaries as motivation to satisfy ambitious goals for brokering authentic transactions. Accordingly, the allegations that brokers were paid high wages and faced high transaction goals, without more, do not support an inference of scienter.

    Furthermore, plaintiffs allege that Chinese new media organizations discovered the issue only *after* and *because of* defendants' decision to fire brokers who had submitted falsified transactions. Plaintiffs allege that Chinese media first reported about fraudulent rental transactions when SouFun fired at least 1,000 rental brokers on September 28, 2015. If defendants knew about falsified transactions in May and August of 2015, when they made the allegedly misleading statements at issue here, plaintiffs do not allege any reason why defendants decided to fire the offending rental brokers on September 28, 2015. Furthermore, plaintiffs have not alleged defendants sold any securities or otherwise profited from the delayed disclosure. The more reasonable inference to be drawn from the alleged chain of events is that defendants were unaware of the fraudulent rental transaction issue until after the May and August 2015 earnings calls.

    Plaintiffs allegations do not give rise to a strong inference of scienter. Accordingly, defendants' motion to dismiss plaintiffs claims under § 10(b) and Rule 10b-5 is **GRANTED** because the FAC has not adequately pleaded scienter or the materiality of the alleged false statements. Defendants' motion to dismiss plaintiffs' claim under § 20(a) is **GRANTED** because plaintiffs have failed to adequately allege a primary violation of the Exchange Act.

## V.    CONCLUSION

    Defendants' motion to dismiss the Amended Complaint is **GRANTED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:15-cv-08508-CAS (JEMx) | Date | October 18, 2016 |
|---|---|---|---|
| Title | ANTHONY MARESCA ET AL. V. SOUFUN HOLDINGS LIMITED ET AL. | | |

      Plaintiffs' First Amended Complaint is **DISMISSED** without prejudice. Plaintiffs shall have **fourteen (14) days** from the date of this order to file a second amended complaint addressing the deficiencies identified herein. Failure to do so may result in dismissal of this action with prejudice.

      IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |